Argument this morning, case number 20-1815, Western Missouri, Thomas Kohlbeck et al versus Wyndham Vacation Resorts et al. All right, Mr. Gross, please begin your argument. Thank you, Your Honor. May it please the court, my name is Michael Gross and I represent the appellants Mr. Kohlbeck, Ms. Hartfield, and Mr. and Mrs. Leakey. Left to my own devices, I'll try to cover three issues. The first is a jurisdictional question that was raised by the appellee regarding the sufficiency of the notice of appeal and what matters have been placed before the court for review. The second is also an issue that's raised by the appellee, which is whether the defense of the affirmative defense of unconscionability was properly before the district court in this case. And third is the appellant's general issue that the summary judgment standard was applied improperly in the district court. The court necessarily engaged in determining credibility and weighing evidence in order to make its finding that there had been no misrepresentation, no coercion, and that the contracts had been properly formed and should be enforceable. So with respect to that, the first issue, the jurisdictional question, the notice of appeal was concededly inartful at best. It misnamed the order that was appealed from and it misnamed this court. But it did clearly indicate, particularly with reference to peripheral considerations that this court has found appropriate in the past, it clearly indicated the intent of the appellants to appeal from the grant of summary judgment against them, both with respect to liability and with respect to money damages. The district court ruled in two separate orders. First, it granted partial summary judgment on liability. And then it granted, it finally completed the judgment by awarding monetary damages. Counsel, I want to ask you, so we have a case, and I don't think it was cited in the briefs, but I'm not positive. It's Evans versus Truman Health Services, 719F3-673. It's an Eighth Circuit case. And there we had a situation exactly like this one, where you had a notice of appeal that set forth an order of a particular date. And the party was seeking to have us review a different order from a different date. It was a motion for dismissal versus a motion for summary judgment. And we said quite clearly that the only thing before us is the order that was specifically designated in the notice of appeal. When you give a specific date for an order, that's the only thing that's before the Court of Appeals on appeal. What's your response? I realize you may not have read that case, but what's your response? How do we distinguish this case? I'm not familiar with the case that the court has mentioned, but I am familiar, I hope, with the principle. First of all, in this case, the order from which the appeal was taken was an order that did two things. It was one order that denied the plaintiff's request for reconsideration of the earlier partial summary judgment order. And it also completed the summary judgment by awarding monetary damages. And when an appeal is taken from the final judgment in a case, which this effectively was, because there was only an interlocutory ruling until this final from the final judgment in a case, it is considered to have, this court has held, that it is considered to be an appeal from all of the orders that led up to, prior rulings, that led up to that final judgment. Well, is it that though? This was a final order because there was nothing left to do. This order disposed of both the summary judgment order. Is that correct? So it's a final order. Yes, Your Honor. Not a judgment, but a final order. And we have jurisdiction over final orders. Is that your argument? Well, my argument would be that you have jurisdiction over the judgment. But you didn't appeal from the judgment. But we do have jurisdiction over something called final orders. So I'm wondering if that's not a way of getting your case before the court. I think that certainly works, Your Honor. And I may be inappropriately going back and forth between an order and a judgment. The judgment in this case, the only judgment entered in this case denominated a judgment, was the clerk's judgment, which wasn't signed by the district court. It's signed electronically by a deputy clerk, as I recall. So I thought it was fair to consider that final ruling to be the district court's final judgment. But I certainly would contend that that order that was designated in the notice of appeal was an order that was the court's final ruling on the liability portion of summary judgment as well as the court's final ruling on summary judgment as a whole. So I certainly, I wouldn't take issue at all. I'd embrace the notion that this court has jurisdiction to consider an appeal from that order. I would stress that the order included the court's ruling on the grant of summary judgment, which was only interlocutory at that time. And I think that it also, under this court's prior doctrine, included all that final order embraced the orders that had led up to it. But the problem with that is, and intuitively, you know, obviously Judge Arnold's correct about the course of the case. But in Evans, we had a motion for dismissal and then a subsequent motion for summary judgment. And that disposed of the case. I mean, it was essentially a final order because there was nothing left for the court to do. And we still came back and said, well, you know, you designated one order, but you didn't designate the other. So that's the only order you can really appeal here. I'd want to reconcile the outcome in Evans from the court's point of view with the court's fairly clearly and repeatedly stressed inclination or policy to construe a notice of appeal liberally to allow for adjudication on the merits rather than default. And this court in prior decisions cited in the appellant's brief and reply brief, I'm sorry, only in the reply brief, has looked at attending circumstances such as, in this case, the statement of issues when it was filed in this court clearly. Okay, so I want to touch on that. There's another case that nobody cited, I don't think, called Shell versus Bluebird Media, and it supports Evans. It's 787F3-1179. And it says, unless the statement of issues is submitted during the time for the notice of appeal, it was an opinion written by Judge Shepard, unless it's in that 14-day period, we cannot consider it. It's untimely. So I realized that we had a prior procedure that allowed a statement of issues to be filed within 14 days, but this one, unfortunately, was filed two months later. So it's directly controlled by Shell. And I certainly wouldn't put all of my reliance on the statement of issues. I thought the statement of issues was relevant. If the court may recall, and if I have time, I'll get to this now, that it's the appellant's position that Rule 3 formal requirements are not jurisdictional. They are claim processing matters, and it certainly doesn't mean that it's okay to file a lousy notice of appeal, but it does mean that it's not jurisdictional, and that might enhance the court's inclination to be indulgent of an inarticulate notice of appeal, as long as the intent of the appellant is clear and as long as there hasn't been any prejudice to the appellee. And I think in this case, when you look at the procedural history of the case, I mean, what else are these guys appealing? They didn't even respond to the matter that was actually adjudicated in that final order, which was the claim for attorney's fees. They only responded about the grant of summary, the initial partial grant of summary judgment. So their intent, I don't think anybody could argue, their intent was to appeal from the award of attorney's fees. Their intent was to appeal from the grant of summary judgment. Procedural history made that clear to the extent that the court's willing to consider it. The statement of issues made it clear, and the statement of issues was not objected to, which suggests a waiver, unless, of course, the court's not going to consider the statement of issues at all. So that is my argument. I can't insist on the case as the court has cited, but I think the principles that ought to control this are the principle that, A, it's not jurisdictional, B, the court has a policy of liberal interpretation, and C, that the intent is clear here and there hasn't been any prejudice even suggested to the appellee. They didn't have any trouble figuring out what it was that needed to responded to in their brief. They just took issue with whether they ought to have to do it. I'm running low on time, so the defense of unconscionability, basically, one can read the answer filed by the appellants to Wyndham's counterclaim as some sort of a counterclaim, which, of course, it could not be. It was an answer. So it asserted an affirmative defense that was based on the sales tactics and the notion that the plaintiff should no longer be bound by the contract that they had signed. The record is replete with testimony by Mr. Kolbeck, Mr. Leakey in particular, but also Ms. Hartfield and Ms. Leakey. That evidence is discussed in some detail in the brief and summarized again in the reply brief. This was a years-long sales tactic, a process that is engaged in, I'm not going to talk about the industry in general, just talk about the record in this case. The Leakeys and Ms. Hartfield and Mr. Kolbeck described a process of grinding down people who have come on vacation and inducing them to come to further sales representations and saying the reason you're not getting everything you'd like to get on this vacation is you don't have enough points, so buy some more. They got tricked into those meetings. They got tricked at those meetings. They were shown accommodations that were better than the accommodations they eventually received. They were told their maintenance fees, which are a significant part of the ongoing cost that goes on for the rest of their lives, would increase only minimally when in fact they increased substantially. There were misrepresentations about the ability to rent your points and offset your maintenance fees. Yeah, so this is Chet Smith. It seems kind of a big bite to swallow that you would have their, as I understand it, they entered their last contract in May 2013 and didn't have any complaints until the suit was filed in 2018. It seems five years is a long time to be under oppressive duress and unconscionable conduct without any complaint, without any action taken. One of the concerns here for what amounts to a waiver or you've acquiesced in the lengthy period of time that's present in this case. Your Honor, I agree that it can be hard to swallow, hard to figure why does it take that much time to complain, but given the facts of this case, I would say that's a jury question. I would urge that that's a jury question. Whether the will of the people who are trying to go on vacation and continually being sold through a deceptive and coercive process, continuing on an ongoing basis to be sold more, the jury ought to decide whether their will was overborne. I understand that the question of whether unconscionability, whether a contract is unconscionable is a question of law for the court to decide, but that depends on issues of fact. I think those issues of fact should not have been determined on summary judgment in this case, given the substantial evidence that exactly that happened, that their will was overborne. They weren't deprived of the ability to enjoy their vacations. They enjoyed being on vacation with each other. That does not mean that they were not subjected to coercive tactics and misrepresentations, nor does it mean that the contract was not unconscionable. There are fact questions there that just weren't appropriate for determination on summary judgment. Counsel, did you actually have an unconscionability claim before the court? Well, and I think that's at least a fair question, because it reads like a counterclaim. But all of the elements, what unconscionability is with respect to a contract under Missouri law is the earmarks of it are exactly what happened in this case. They are coercive tactics, misrepresentations, high-pressure sales pitches. That is exactly what the plaintiffs were describing. It's what they described in their testimony for the summary judgment record, and it's what they alleged in their answer. They asked for the wrong relief in their answer, but it's an answer. It's not a counterclaim. And so unconscionability was there. In their memo, they talked about they shouldn't be held to this contract because of the coercion and the misrepresentations, and I think they had the defense properly before the district court. I am out of time, and I appreciate the court's attention. Thank you, Mr. Groves. Mr. Sharpe. Thank you, your honors. Can you hear me okay? Yes. Great. Darren Sharpe on behalf of the Appalachee Windham Vacation Resorts, Inc. May it please the court. The federal rule of appellate procedure, and I'll refer to it simply as Rule 3 from here on out, requires that a notice of appeal designates a judgment order or a part thereof being appealed. The Supreme Court has held that Rule 3C is a jurisdictional requirement. The Eighth Circuit has followed that, obviously, and has also ruled that it is a jurisdictional requirement. As late as 2019, the Eighth Circuit in Johnson v. Leonard, a case cited by the appellants in their reply brief, ruled so. In this particular case, the notice of appeal is very, very specific, as this court has noted. It appealed the order granting monetary damages entered in this action on the first day of April 2020. That is extremely specific, and the only intent that anyone can read from that is that they are appealing that particular order and no other. There is no mention of the final judgment. Had it done so, perhaps they could have swept up the summary judgment order on that final judgment. They did not. The only order they appealed from was the April 1st, 2020 order. In addition, Your Honor, they've attempted to argue that it's not jurisdictional, that Rule 3C is akin to a claims administrative processing rule, and therefore is not jurisdictional. Counsel, I'm wondering if this wasn't a final order over which we had jurisdiction. Your Honor, if you are going to interpret April 1, 2020 order as a final order, would you then allow them to appeal every decision that occurred prior to that, such as the dismissal of their complaint, their amended complaint for failure to file it in a timely manner, or the decision to dismiss almost all of the plaintiffs for lack... Those wouldn't be final orders. Well, but it would be... This is the last thing that had to be done in the case. Right, and so if that's the final order, wouldn't all those other orders be subsumed into that, is my question, and I don't believe it is. It is clear that based on the law, the order they appealed from was only the April 1, 2020 order, and so with respect to the Rule 3C jurisdictional argument, they cite Kontrick and Eberhardt, which are two Supreme Court cases from 2004 and 2005. Neither one of those cases addressed Rule 3C under the appellate rules. Instead, they addressed the bankruptcy code rules and the federal criminal rules of civil procedure with respect to timeliness issues for a motion for new trial and a motion to object to discharge a debtor in bankruptcy. They did that... Counsel, under your view, it's more than just the damages. I know opposing counsel made the argument that this was all about damages, so why would anyone appeal that, but this also is... Unless I'm wrong, and I want you to correct me if I'm wrong, this also involved the denial of a motion for reconsideration, which I think the district court construed as a 60B, and so this isn't a situation in which there's nothing they could appeal here. There is something they could appeal in that final order, and that's the motion for reconsideration. What they did specifically in response to our motion for the award of specific monetary damages, what they filed was a motion for reconsideration of the summary judgment order. That was their response. That was their opposition, and because the summary judgment order was an interlocutory order at that point, their motion to reconsider could be construed as a Rule 60B motion, and under a 60B motion, it was denied. They did not offer any new evidence. They didn't offer any new legal arguments that couldn't have been applied when the summary judgment ruling was entered, and therefore, the court correctly dismissed that motion to... Excuse me, denied that motion to reconsider, and so because of that, this court's standard of review for the April 1, 2020 decision is an abuse of discretion, which is different from a review of a summary judgment motion, which is less of a hill to climb for the appellants, which is how Wyndham is prejudiced in this instance, to be honest with you, as well as the additional attorney's fees they've incurred in arguing these issues, which could have easily been taken care of with a notice of appeal that complied with Rule 3C. So yes, you're exactly right. Their response was really a motion to reconsider the summary judgment order, and the court denied it. That's what they appealed, and so if I could get back to the rule... Counsel, one last question. This is Jed Smith. Why isn't this a claims processing type of, quote, jurisdiction question as opposed to a true subject matter jurisdiction, which the Supreme Court has cautioned lower courts to avoid mixing those terms? Yes, Your Honor. Thank you for asking that question. The 11th Circuit addressed the issue in March of 2020, and the case is Automotive Alignment and Body Service versus State Farm, 953 F3rd 707. The pinpoint site is page 722. The 11th Circuit acknowledged that Kontrick and Eberhardt said that if there is a court rule that was not passed by statute, that it could be considered as a claims processing rule and not jurisdictional. However, the 11th Circuit said until the Supreme Court overrules its prior precedent ruling Rule 3C is jurisdictional, they were duty-bound to follow the Supreme Court precedent, which included Smith v. Berry, the 502 U.S. 244 1992 case, and so they ruled that it was a jurisdictional issue. However, the 11th Circuit in the Automotive Alignment and Body case took it a step further and said even if Rule 3C is a claims processing rule, under the facts of that case, the appellees did not waive or forfeit the requirements of Rule 3C, and so therefore we would also enforce Rule 3C, and that's exactly what happened in this case. If this court were to construe Rule 3C as a claims processing rule and not jurisdictional, Windham has not waived or forfeited. We raised the issue in our brief as appellee under the 11th Circuit's decision in Automotive Alignment and Body, the 11th Circuit said as long as it's raised before a decision on the merits and in the briefing, it is not waived, and so we have not waived it. This court, the 8th Circuit, has ruled in Dill v. General American Life Insurance Company, it's a 2008 case cited in our brief, 525 F. 3rd 612, that if the claims processing rule is to be enforced by opposing counsel and the opposing party, then the court is obligated, obligated to enforce it. So even if Rule 3C is construed as a claims processing rule, Windham's raised the issue and said they didn't comply with Rule 3C in their notice of appeal, therefore this court must enforce Rule 3C. Very quickly, the designation of issues, because that was raised in their reply brief, I wanted to briefly mention that. Not only is the Shell v. Bluebird case applicable, but it's also very similar to what occurred previously when former Local Rule 3B was in place. Under former Local Rule 3B for the 8th Circuit rules, a party could file an appeal information form and the court could use that to assist in construing the intent of a notice of appeal. However, case law in the 8th Circuit said that if someone files an appeal information form sheet untimely, the court would not construe it and would not consider it. That's exactly, by analogy, what's occurred here. They filed their designation of issues 56 days late. This court issued a briefing schedule on April 17th, asking for, by May 1st, to have the issues designated by the appellants. They didn't do so until June 26th. So, again, appellants have been represented by counsel. They're not pro se. They had counsel in the district court. They have counsel now in the 8th Circuit. They must be held to the rules and we have not waived those requirements. I'd like to now turn quickly to the orders that were entered. The only order that was appealed from that April 1, 2020 order, as I mentioned, they did not specify any contrary evidence as to the damages that should be ordered. All they simply did was ask the court to reconsider summary judgment. They didn't provide any new legal arguments, no new evidence. Therefore, this court should affirm the district court's decision granting the order of April 1, 2020. If the court is to construe and decide whether the district court enters summary judgment, the court should also affirm summary judgment, the summary judgment order of December, I believe it was December 16th, 2019. Wyndham Vacation Resorts filed a counterclaim for breach of contract. The appellants stopped making their payment obligations pursuant to their contractual obligations when they filed their lawsuit in 2018. And so, consequently, Wyndham filed their counterclaim for breach of contract. Wyndham asserted in its statement of facts the contractual terms as well as the deposition testimony of the appellants. In response to those statements of fact, the appellants simply responded and I quote, admit they signed the document but deny the remainder of the allegation. They did nothing to controvert those facts. They didn't comply with federal rule of civil procedure 56 or the local rule of the district court 56.1. All of the statements of fact asserted by Wyndham were deemed admitted and should be deemed admitted on review. What they did, however, the appellants filed their own statement of additional facts and what they did was parroted their affirmative defenses of duress and fraud in the inducement and cited the only deposition testimony that was taken in this case and that was of the Leakes and requires the involuntary acceptance of terms under circumstances permitted that permitted no other alternatives due to coercive acts of the other. In other words, the parties were prevented from exercising free will by threats or wrongful conduct of the other. And those are cases cited in our response brief. The affirmative defense of duress, whether it can apply or not, is a legal question. That's the Long's Marine case cited in our brief. The district court ruled as a matter of law duress was not available for the following reasons. The deposition testimony of Mr. Colbeck and Ms. Hartfield acknowledged that they could always leave the sales presentations that Wyndham presented. They were always offered an opportunity to ask questions. In fact, Mr. Colbeck testified that the last sales meeting he attended with Wyndham, he left and tore up the offered contract. That is not duress. They had free will. In addition, they testified that they had entered into contracts previously and decided to rescind them. Under timeshare law, they have, depending on the state you purchased it in, a certain number of days to rescind their agreement. Mr. Colbeck and Ms. Hartfield had rescinded previous contracts. They exercised that right. Based on those undisputed facts, their own deposition testimony, the district court ruled these were not oppressed people. They had opportunities to leave. They had opportunities to ask questions. They had opportunities to rescind their contracts, which they had done in the past. The same goes for the leaks. They also acknowledged that they had opportunities to ask questions. They had opportunities to rescind their contracts, which they did specifically in the past. And they also acknowledged that all of the facts asserted in their affirmative defenses for duress arose from one meeting in 2015 in Branson, Missouri. And in that meeting, they entered into a contract, but then subsequently within five days under Missouri law, rescinded their contract. They got every penny back. They were not damaged. There was no duress there with respect to those facts regarding the affirmative defense. The leaks also allege they were tricked, and that's a term that Mr. Gross also used, into attending a meeting in 2018 in Tennessee. The problem with that is their deposition testimony, as alluded to in the record, showed that they didn't enter into a contract that day. They walked away. So whatever exertion was influenced over them, it didn't cause them to enter into a contract based on that meeting. And more importantly for the district court, I believe, as noted by this court, these parties have been Wyndham owners for years upon years. They entered into these contracts and oftentimes increased their points by entering into new contracts. And they used their contracts. They used the last contract certainly that they all entered into for the leaks. That was 2013. And for Colbeck Hartfield, it was early 2017. They enjoyed the benefits of these contracts. I'm sorry. My electricity just went out. Can you still hear me? Yes. Okay. So clearly because they used their contracts, they ratified those contracts. They cannot assert duress. With respect to fraud and the inducement, let me address because my time is running out. Mr. Colbeck and Ms. Hartfield at the end of the day in their deposition testimony said the reason why they wanted out of their contract was not based on any alleged misrepresentation. It was because Ms. Hartfield was experiencing a medical hardship and they couldn't travel anymore. That had nothing to do with the alleged misrepresentations that occurred before they entered into any contract. They also were afforded an opportunity to present evidence of this medical hardship to get them out of the contract. And she had testified that she received a letter saying they couldn't get out of the contract. But if they provided additional evidence, Wyndham would consider it. She never presented any additional evidence. So the fraud and the inducement claim for the Colbeck Hartfield simply does not exist as a leaks. As I said, their fraud and the inducement claim is based primarily on that November 2015 meeting in Branson where they acknowledged that even though they didn't like the conduct, they thought it was coercive. They rescinded their contract and got every penny back. They were not oppressed. All of the allegations regarding the leaks, they've been owners since 2001. They had used their contract over and over, never complained about the furnishings, never complained about the reservation systems. They, as the court noted, therefore could not rescind because they had ratified their contracts. I see my time is up. Unless there's any other questions, Wyndham asked that this court affirm the district court's decision in all respects. Thank you, Mr. Sharp. Mr. Gross, your rebuttal. Thank you, Your Honor. I'll be brief. The motion for reconsideration, I don't think, can be seen as a Rule 60B motion. Rule 60B in particular provides only for relief from a judgment or an order that's final. The order from which the plaintiffs were seeking relief was an interlocutory order. It was part of summary judgment. It was a perfectly appropriate request for reconsideration of an interlocutory order in a pending case. When that relief was reaffirmed by the court's order of April 1st, that's what they appealed from. I certainly would say that that final ruling, an appeal from that order, which covered two things, embraced the rulings that had led up to it under this court's doctrine. Thank you, Mr. Gross. Your time has expired. Thank you, Your Honor.